■ CENTENNIAL LIFE INSURANCE COMPANY, Appellant, v YVONNE A. SCHERRER, Respondent. [594 NYS2d 768] —Judgment of the Supreme Court, New York County (Burton S. Sherman, J.), rendered February 7, 1992, after bench trial, in favor of defendant, *inter alia,* requiring plaintiff to pay disability benefits in the full amount of the policy, with no offset for the amount of benefits otherwise available from Social Security, is unanimously reversed, on the law and facts, and judgment is directed for the plaintiff in the sum of $45,672.71 for benefits paid during the period from October 19, 1981 through June 20, 1990, and directing that the offset of Social Security disability benefits available to defendant should be applied against the monthly payment due defendant, with costs and disbursements payable to plaintiff. The Clerk is directed to enter judgment in favor of the plaintiff in the sum of $45,672.71, and the offset of Social Security disability benefits available to defendant should be applied against the monthly payment due defendant, with costs payable to plaintiff.

Plaintiff insurer issued a disability insurance policy which provided coverage to defendant Scherrer. In this declaratory judgment action it sought to recover benefits paid by it to defendant.

The evidence adduced at the bench trial before Justice Sherman, at which defendant appeared *pro se,* reveals that in 1981 defendant was diagnosed as having rheumatoid arthritis. Consequently, she was unable to continue her occupation as an airline attendant for the now defunct Pan Am. Defendant sought "total disability" benefits from the plaintiff Centennial Life Insurance Company, as a consequence of her medical condition. In October 1981 plaintiff insurer commenced monthly payments of $450.06 (or 60% of defendant's flight attendant salary) less an offset for her Social Security disability benefits which she was awarded on February 28, 1982 retroactive to October 1981.

While plaintiff did not contest the fact defendant did have the subject medical condition and was, otherwise, a "covered" insured, it contended that the defendant was not entitled to insurance benefits because she engaged in "an occupation for wage or profit" during the first 24 month period subsequent to the qualifying disability period as set forth in the following policy provisions:

"The term 'total disability', as to all Employees * * * as used herein means the complete inability of an Employee to

engage in any and every duty pertaining to any occupation or employment for wage or profit for which the Employee is or becomes reasonably qualified by training, education or experience, except that during the Qualifying Disability Period plus the first twenty-four (24) months of absence from work due to disability thereafter, the employee shall be deemed totally disabled while he is unable to perform any and every duty pertaining to his occupation and is not engaged in any occupation or employment for wage of profit * * *

"[T]he benefit payable for any monthly period of total disability, or portion thereof, for which a monthly benefit is payable * * * shall be reduced by the amount of any Other Income Benefit * * * available to the Employee for such period."

Further, the policy defined " 'Other Income Benefits' ", *inter alia,* as follows: "(d) The Federal Social Security Act together with all amendments thereto, including benefits thereunder to or for any and all dependents (as therein defined) of the Employee on account of the Employee's disability, but not including any increase in benefits available to the Employee or to or for any and all dependents on account of the Employee's disability as a result of amendment of such Act."

The record shows that the defendant was able to secure a government SBA loan of $150,000, and with $30,000 from her brother, went into the restaurant business on February 21, 1981. The restaurant was in a brownstone which she purchased with the loan. Defendant admitted that she supervised the restaurant staff from the start up date, with help from family members and friends. She lived above the restaurant and on those days when her physical condition prevented her from coming downstairs, she still continued to give the orders. Sometime in 1986, defendant purportedly developed asthma, a side effect of arthritis. Defendant ceased running the restaurant on June 20, 1990. Defendant, who paid $350,000 for the building in October 1980, was seeking to sell the property at the time of trial for $2.2 million.

Further, in November 1989, defendant voluntarily asked Social Security to stop payment. Apparently defendant had been sent to undergo rehabilitation treatment which required that she get inside a whirlpool with other disabled persons. Defendant found the entire experience "very degrading" and wrote Social Security to discontinue her benefits rather than continue the rehabilitation.

According to defendant, the U.S. government stipulated she could not take a salary from the business. She denied earning a salary from the restaurant, Devon House Ltd., and produced a corporate tax statement in support. She claimed she survived on financial help from her family. While there was a 10 year lease (10/8/80—10/8/90) between the restaurant (Devon House Ltd.) and the building owner (defendant herself), the rent was not fixed but the restaurant's revenues paid for all the taxes and expenses of the building. While she collected rent from six rent controlled tenants, the money was not enough to pay the gas bill.

The evidence clearly demonstrates that, while defendant did have a disabling disease, she was engaged in the occupation of a restaurant manager for "wage or profit" during the time that total disability benefits under plaintiff's policy were paid from October 1981 to June 20, 1990. Consequently, she was not entitled to receive disability benefits under the policy.

The defendant was not a totally disabled person who managed a restaurant without any remuneration simply for therapeutic gain. The record shows a shrewd business person who created a successful business. She was able to obtain a SBA loan of $150,000 and use that to acquire a building where she could live and also where her restaurant would be located. Upon incorporating the restaurant, she became its president and a stockholder of 97.5% of its common stock. The 1980 corporate tax return for the restaurant demonstrated that defendant was an officer and devoted all of her time to the business, as testified to at trial. While no compensation or expense account allowance were allegedly paid to her, a $79,500 loan was made to her as stockholder.

In addition, the lease between defendant as landlord and the restaurant, as lessee, required the restaurant to pay as rent the greater of (1) the annual sum payable to Barclay's Bank of New York with respect to $80,000 of the $150,000 SBA loan made to the corporation or (2) all the expenses in operating the brownstone, less any income from the building. As it turned out, the restaurant paid all the taxes and expenses on the building as well as $80,000 of the SBA loan.

This evidence unmistakably demonstrated defendant was engaged in an occupation for remuneration or profit despite her disability. The lease that was negotiated, in essence, provided that the restaurant would pay all defendant's taxes and expenses related to the building. While the terms "wage or profit" are not defined in the policy, common usage would

indicate that defendant did receive a form of "compensation", "benefit", "advantage" or "gain".

Further, no fair interpretation of the evidence supports the court's conclusion that plaintiff was not entitled to a set off of Social Security benefits "available" to defendant. The trial court found that "defendant's reasons for not receiving Social Security benefits were reasonable under the circumstances, and, therefore, plaintiff could not offset its monthly disability payments to defendant by the amount of the available Social Security payments". This finding has no support based on the plain and unequivocal language of the insurance contract itself. Due to the supposed "degrading" rehabilitation program recommended by the Social Security Administration (SSA), defendant voluntarily declined to accept the benefits in November 1989. Since the benefits were not cancelled nor terminated by SSA the benefits were and are still "available" to her and should, therefore, be deducted from the total benefits pursuant to the terms of the policy. Concur—Murphy, P. J., Carro, Rosenberger and Asch, JJ.